David Byrd May it please the Court, Your Honor. For Plaintiff Appellant Stan Cooper, I'd like to reserve four minutes for rebuttal. The issue in this case is whether the Privacy Act's actual damages element may be satisfied by proof of mental or emotional distress without evidence of pecuniary loss. Am I correct in understanding that's the only issue before us? That is the issue which we believe the District Court erred on. That was the basis for the District Court's summary judgment against us. We believe that the District Court's construction of the statute requiring pecuniary loss was predicated on an erroneous application of the sovereign immunity canon, and what we're asking you to do today is reverse and remand for a trial on the merits of the issue. We believe the District Court's construction of the Privacy Act's actual damages element does not comport with Supreme Court precedent. The plain meaning of the statute, other sections substantive and remedial and purposive in the Privacy Act, or traditional tools of statutory interpretation. We think it overlooks the fact that the Privacy Act protects rights that are inherently non-pecuniary in character and adopts a narrow construction of the Act that produces arbitrary results contrary to Congress's intent. What I'd like to do, Your Honor, is begin with the sovereign immunity canon and attempt to explain why we think it has no bearing at all in the construction of the actual damages requirement. If you look at subsection G1 of the Act, that is the provision of the Privacy Act that creates a cause of action. It provides individuals with a right to sue Federal agencies for violations of the Privacy Act that cause any adverse effect, and it further provides that District Courts shall have subject matter jurisdiction over such actions. Subsection G1 controls the scope of any waiver of sovereign immunity, but it's not at issue in this case. All parties here agree, Supreme Court precedent and Circuit Court precedent holds, that an adverse effect is the equivalent of an Article III injury and fact analysis, and that it can be satisfied by emotional distress. What's at issue here is not G1, but G4, one of four remedial subsections included in the Act that define the remedies that a plaintiff may get if he or she fails to prove a Privacy Act violation. Specifically, G4 provides a monetary award for willful or intentional violations equal to actual damages, but not less than $1,000. The issue, therefore, is a merits-focused one, the type and measure of damages that a plaintiff must prove, and we believe that the sovereign immunity canon has no bearing on that merits-focused issue at all. Indeed, we think it would be inappropriate to invoke the canon to narrow what Congress gave in a situation where the requirements of G1 are clearly satisfied. Furthermore, even if the canon applied, it would not displace the other tools of statutory interpretation, and that's where the district court and certain other courts that have looked at this issue erred. If you under the can – even if the canon were to apply, you would still have to consider the plain meaning of the statute, other sections of the statute, common law principles of torts and constitutional law principles of privacy that were relevant to Congress when they considered it, and you would have to consider the legislative history and the interests and consequences of it as well. When you do that, we submit, the factors all point in favor of a construction of actual damages that shows that it can be satisfied by proof of mental and emotional distress. Kennedy. Let me ask you this question. It's what really bothers me. On the canon of construction of sovereign immunity, we have a situation where the courts, on the meaning whether actual damages encompass anything other than what I call measurable damages or special damages. When you have that kind of situation where the courts don't agree, doesn't the canon almost always come into play in saying, well, it's not clear, and in order to gain entry into the Federal FISC, into the Federal money, Congress has to speak with clarity. And here it's unclear. The simple fact that courts have disagreed in some circumstances and split over the construction of the actual damages doesn't end the inquiry or trigger the canon. This Court has a duty in its own right to conduct an independent evaluation of the statute based on all the tools of statutory interpretation, starting with plain language. I know where you're going. Okay. You're saying that the sovereign immunity doesn't trump anything, and if the other canons and history and so forth, you get convinced you can discard sovereign immunity. That's your position, I think. I think that in essence that's correct. I think that if you look at the cases that are cited by the government, which adopted narrow construction of actual damages based on the canon of sovereign immunity, none of them deal with the Supreme Court authorities that we've cited in our brief, which make it clear that the canon is only one of many tools that can be used, and in fact suggest that the canon really only comes into play in a situation of last resort where all the other tools are indeterminate and the Court can't otherwise define the meaning of the statute. None of the cases involving the canon outside of the Privacy Act context, we think, involve a statute like this one, which has in subsection G-1 a clear waiver of sovereign immunity that is broader than the provision at issue here in G-4. Also, none of the cases cited by the government engage with and examine the plain meaning of the term actual damages and its common usage based on objective sources of information. And the starting point for that is really the Privacy Protection Commission 1977 report, which found that there was no generally accepted definition of actual damages, but has absolutely no discussion whatsoever of why that is the case. That finding from that report, which is essentially an ipsa dixa assertion, has been repeated without examination in the cases cited by the government. But we think if you actually go back and look at the plain meaning based on objective sources of information, there is a clear and common usage for the term that encompasses non-pecuniary injuries like emotional distress and mental damage. Kennedy. Counsel, let me just tell you, I agree with you about the sovereign immunity. I clearly see that there's a relationship with the Fair Credit Reporting Act. I see the preamble talking about all damages. I'm really with you there. But I find that the balance when you apply the canons of construction with respect to every other aspect that you're talking about, it is mush. It's just mush. You can go either way you want. It is a very confusing area. There's no clarity to it at all. Can we, based upon the FCRA and the preamble to the Privacy Act alone, find that actual damages includes non-pecuniary damages? Well, I certainly think those are all compelling. And I think in and of themselves they support the construction of the Act that we're holding. So I think the short answer to your question is yes. There is more, however. And it's not simply the statement of purpose, which is in Section 2, which Your Honor alluded to. It's also substantive requirements. For example, subsection E10, which requires Federal agencies to adopt safeguards and measures that protect against threats of embarrassment and inconvenience and unfairness. Remedial provisions which authorize suit when there's been a failure to maintain records that results in adverse determinations related to qualifications, character, rights or opportunities. These are inherently non-pecuniary features of the statute and interests that are protected by the statute. All of that, not only the statement of purpose in Section 2, but the substantive and remedial provisions all point to a congressional intent to protect more than simply pecuniary. Now, that makes sense. I agree with you about that. I think those are additionally important points. Help me with this problem. Mr. Cooper has a little timeline for myself and at least what I found in the record. And it seemed that most of the embarrassment that he felt was when he knew that people were going to charge him with a criminal offense and when that was exposed. Do I understand correctly, you're not asking us to find that when someone is charged with an offense, that all that comes with that? I mean, everybody that's ever charged with a criminal offense, of course, is deeply embarrassed, deeply troubled. But we don't provide for that in our jurisprudence. I gather you're not arguing that we should be doing it in this case. No, we're not, Your Honor. The mental and emotional distress that gives rise to his privacy cause of action and which is sufficient to satisfy the actual damages requirement is mental and emotional distress related to the loss of control over information that he provided to the FAA and the Social Security Administration concerning his personal and medical care. And I gather the district court found that basically. Yes. I mean, it sounds to me like the district court has taken the first two steps in a four-step analysis and three is sort of proximate causation and four is his actual damages. I think that's correct. But if we agree with you and if we send it back to the judge and the district court, how do you show that there are non-pecuniary damages that arise from the time that your client is aware that there has been, he's been, if you will, tracked down by an improper use of the statute that is distinct from his fear of and disclosure about criminal liability? Where does that come up? How does it appear? The simple answer to your question, Your Honor, is you have a trial. You call witnesses. We will elicit testimony from them that we think is sufficient to show that. I'm sure the government will want to cross and examine them and attempt to discount the evidence that we've presented. And a trier of fact will, as triers of fact do all the time in our legal system, make an appropriate legal determination based on the evidence that is presented at trial. Are you limiting your damages in this kind of a case to $1,000? We are not today taking a position on the amount of damages. We think we should be able to have a trial and elicit testimony. In other words, you think you should be like in any other civil action where they claim emotional damages and let the trier of fact decide that? I think so. You're not limiting your claim. You're not interpreting the statute to limit your claim for emotional damages as part of actual damages to $1,000 since there's no medical bills or anything else here. That's correct, Your Honor. We are not construing the statute to limit the amount of money that we could recover to $1,000. You might have had a better – you might have a better case if you said actual damages mean emotional damages but not more than $1,000. I think at the end of the day – As a matter of fact, that was the impression I think in one of the cases you cited. Was it the Johnson case? In different circumstances, courts have, when faced with evidence of emotional and mental distress, established different levels of recovery. For example, in one of the cases I recall, there was $2,500 was awarded. Our position is that the evidence should be presented to a trier of fact, and the trier of fact should make the determination. If the trier of fact's determination is based on the evidence and is appropriate, we're happy to live with that. Well, the problem is, you know, when you talk about actual damages and then you talk about emotional damages, there's no limit. On many – on many of the cases of sovereign – where sovereign immunity is waived, there is a limitation. That's not true in the Federal Court Claims Act but in many other areas. And it's not – it's not how Congress chose to structure the Act either, Your Honor. And I think that is why – I know this is aside from the real question, but there are matters that I think come into play with construction and justification. I completely – I completely understand that. I hope I've spoken to the question. I'm running into my rebuttal time. I would like to save some time for rebuttal if there are other questions. I'm happy to take them. If not, I'll leave. You have two minutes. Thank you for your argument. We'll hear from the agency at this time. May it please the Court, Samantha Heifetz for the United States. Can you move that microphone close to you and speak right up? Absolutely. Is that better? Wonderful. I apologize. Samantha Heifetz for the United States. One of the first questions that was asked was about the issues that are presented here today. And we have both the question of actual damages upon which the district court ruled. I think it's also useful, though, to step back and appreciate, as Judge Smith was pointing to, that there are some other concerns in this case in terms of the nature of the harm alleged and the source and the intentionality or willfulness, as well as, as we raise in our briefs, the very question of whether or not the district court properly concluded that a violation of the Privacy Act had occurred. The harms that are presented — Do you cross-appeal? We don't ask for an expansion of the relief that was awarded, so there's no cross-appeal in the case. We are presenting — we presented other grounds on which this Court could affirm the district court's determination, but there's no broadening of the relief requested. Just to follow up on that, you're not asking us to overturn the district court's determinations about a violation of the Privacy Act. You're just talking — all we're talking about here is actual damages and, by implication, proximate causation of the — of those damages. Is that correct? We do raise those issues in the brief, and so, yes, Your Honor. But in addition, we also point to reasons that we believe that the district court erred in its determination that a violation of the Privacy Act was made. We don't think that this Court needs to reach that in order to affirm the district court. We think there are a number of grounds on which the district court's dismissal — Well, of course, we reverse. Do we — are we obligated to reach that if we reverse? I think that you would not be obligated to reach that if you reverse, given that there is not a separate cross-appeal. Of course, if we reversed and went back and there was a judgment, I assume — We would raise, yes. You could raise it, yes. That's right, Your Honor. I agree. When given an opportunity to articulate the harms that Mr. Cooper claimed in his complaint later in interrogatories, as well as in declarations, we consistently see what Mr. Smith — what Judge Smith pointed to in Mr. Cooper's testimony, and that is harms that are derived from follow-ons that are not at issue in this case. That is the public disclosure pursuant to Mr. Cooper's indictment and prosecution as opposed to the discrete disclosure of his medical status by the SSIOIG to the DOT's Office of the Inspector General. Do we have to reach — I mean, you know I'm concerned about that for ultimate disposition purposes, but do we really have to reach the proximate causation issue in order to decide the question that was appealed, which is the meaning of actual damages under the Privacy Act? Well, I think this is useful context because it's important to appreciate what the implications of this case would be in terms of if recovery is available here in a case like this, if actual damages reaches so far as to recognize the — whatever portion of the anxiety and embarrassment that's been asserted, that's been claimed, that is attributable back to the violation that the district court found occurred when the SSA's OIG revealed the medical status to DOT's OIG, if that gives rise to a claim for actual damages here, which, as Judge Bright noted, here has a minimum of $1,000 but no maximum, we're really opening the doors in a manner that certainly the Supreme Court and other courts of appeals that have considered this issue have not anticipated. Well, why don't you just argue the case? You know, there are a lot of funny, difficult problems in the future, but we've got a difficult one right now. And the one here, this reflects that, because what we've seen in all of the courts of appeals that have addressed this issue, and that's uncontroverted as a legal fact, is that there's a distinction between adverse effect and actual damages, that the adverse effect — In this case, though, I mean, let's be modern, if you will, about this. We're at this 2010. Privacy issues have taken a whole new meaning. Massive computers that can store incredible amounts, gigabytes, terabytes of data about individuals that the government has that could be disclosed. It could be enormously embarrassing to someone, bring enormous pain, suffering to them that have nothing to do with a criminal violation. So we're really talking about that as well. This case, if it were decided along the lines that the plaintiffs wanted, would open up that. So do we not have to be concerned, for example, about somebody who, say, has leprosy and that was not disclosed in anything, and a government agency in violation of the Privacy Act disclosed that to the great horror of the person who thought that the data was confidential? There's no criminal aspect involved. Why wouldn't, given the purpose of the Privacy Act and some of the things that were said on the floor of Congress, make it clear that that is, in fact, the very kind of a thing that they were thinking about? Well, a few things in response. In terms of the legislative history, that actually provides significant support for the government's position here. You can find both. There are statements, as you note, on the floor that were made that would specifically limit actual damages to out-of-pocket losses. There's also the distinction that is reflected in Doe v. Chau, where the Supreme Court talks about the way in which this scheme parallels the scheme that exists in certain traditional defamation cases per quad cases, where pecuniary loss, special damages must be shown before any recovery is available. And I'd be happy to speak to that. You agree that Chau didn't decide this case, though, right? I agree that Chau did not decide this case. But I do believe that its discussion of the legislative history does provide support for the government's position here. So I'd be happy to discuss that further. But more broadly, in terms of the structure of the Privacy Act, it's worth noting at the outset that there absolutely are not actual damages made available, monetary damages made available for all violations of the Act. Many violations of the Act are only remedied through injunctive relief. And those violations, too, can easily be seen as giving rise, potentially, to both pecuniary and non-pecuniary losses. For example, the failure of a government agency not to amend someone's records. That is a violation that one could easily imagine giving rise to employment problems, et cetera. But that is clearly, as a statutory matter, not amenable to actual damages. But that's because the statute was drafted in such a way that it wouldn't be, right? And my point, Your Honor, is simply that the Congress, in choosing the term actual damages in both how it structured the Act and in choosing this language, clearly sought to limit the liability of the government. That there was a concern, as the Fourth Circuit noted in its Doe v. Chau decision later affirmed by the Supreme Court, that the price of actual damages as a phrase, that the price of the gatekeeping function, as the Court referred to it, that it exacts, is that there will be instances in which plaintiffs cannot be compensated. And the Supreme Court recognized that implicitly in its Doe decision because there the Fourth Circuit had held that that plaintiff's claims of damages, whatever actual damages might mean, his claims of mental distress did not rise to the level of being cognizable. And in determining that a person in that position who had no actual damages per the courts of appeals' decision could not get the $1,000, the Supreme Court was implicitly recognizing that there would be persons who might have an adverse effect but did not have claims rising to the level of actual damages. Actual damages is plainly a limiting term. And so where we have a clear effort by Congress to constrict the, what we call the susceptibility of the public fisc, of the government to claims, we have to be very careful in how, as Your Honors have noted, in how we approach that. And here, what we know for certain is that the term has no certain meaning. Every court of appeals that has looked at this issue, no matter where they have come out, the Fifth Circuit, the Eleventh Circuit, the Sixth Circuit, the one thing they have all agreed on is the very fact that actual damages has no plain meaning. Well, doesn't that actually argue against the government's case? I mean, the reality is, I agree, it's, with the exception of the Fair Credit Reporting Act, which is somewhat analogous in where it's pretty clear that there are non-pecuniary damages available, as well as the instances that opposing counsel referred to within the Privacy Act that suggest that these types of damages should be recognized. It is much. I mean, you've got these commissions that look at it, they can't decide. You've got different courts of appeal that look at it, they can't decide. But it is, after all, a Privacy Act. The whole idea is that there are things about us as individuals that we wish to keep private, and that under the law we have a right to keep private. And then the question is, what happens if the government doesn't do that? And as I say, in 2010 it seems almost incongruous that the government takes the position that no matter, and I'm putting words in your mouth, no matter how outrageous the government's action in violating the Privacy Act, that it suffers no damages or it has to pay no damages for someone who suffers mental anguish as a result. I would think that 99 percent of the damages that would be suffered under the Privacy Act would be mental and non-pecuniary in nature. It's hard to even describe when you would have a pecuniary damage. Well, you absolutely do have pecuniary damages. To go back in many instances, to go back to what you noted earlier, what we see today in terms of the bulk of Privacy Act cases involving government agencies, social security numbers and the loss of identifiable information in that vein, giving rise to concerns about identity theft, is a clear area of potential Privacy Act issues and concerns and litigation. And if an identity is stolen and there are pecuniary losses as a result, there's no question that that is cognizable. But there's a whole range of other kinds of pecuniary losses that are very substantial in terms of the, you know, this Privacy Act was passed post-Watergate, and when you read through the legislative history that's consolidated in a single volume, the source book, what you find is a lot of concerns about how government agencies are addressing employment records, what the implications are for employment determinations that are made for individuals who work for the government. So in terms of — Well, as a matter of fact, wasn't President Nixon alleged to have disclosed the sexual orientation of a number of people or threatened to do so in order to get them to do or not do certain things? Isn't that part of the impetus for the Privacy Act? That may be, Your Honor. It's not part of the source book that I'm familiar with in terms of the legislative history. Extend my word for it. Okay. The legislative history does focus a lot on the use of Social Security numbers as popular identifiers, even though that continued to be something that occurred quite a lot after the enactment of the Privacy Act. The point is that there are a whole range of pecuniary losses that we do see. Okay. I'll grant you that. Let's say that there are indeed all of that. But does that gainsay what I said about non-pecuniary damages? Well, I think there are two things in that regard. First of all, just to note that the FCRA, where that's been held to have — to cover non-pecuniary losses, those are not cases with the United States as a defendant. So we're not seeing those as cases that were — where the lens of sovereign immunity was applied, and it is the United States' position that that doesn't extend. It's a sovereign immunity issue. But if you get past that, it's really not any different. So here, I mean, there's no question that there may be a variety of instances that give rise to various intangible, non-measurable losses. But we have — what we know for certain is that Congress chose the term actual damages. It didn't simply say damages. It certainly didn't provide any further phrasing such as pecuniary and non-pecuniary damages. But even if it had simply said damages, we would have a different case before us. What we have in this instance is this language that must be described. Kennedy. But it does say damages in the preamble, doesn't it? It does. And that goes to my — the point that I was looking to raise earlier, which is that we know that though they say all damages, clearly that's not the case because the remedial scheme is significantly limited in its application, both in terms of the intention. There are various limitations that are imposed by the very nature of the remedial scheme and a whole variety of violations that are not remedied by the monetary damages provision. I was — You know, there's lots of congressional legislation where Congress puts in an ambiguous word in order — one person says, yeah, that's what it means. Actual damages means that you're going to get mental suffering. And another congressman says, we got them. That's no mental suffering. So they put in a — not a specific word like we're supposed to do when we write opinions, but a very ambiguous one just for the reason to get the legislation passed. And that's what you might have here, too. Well, I'd like — in response to that, and I think this will tie together two points that have come out. What we do know from the legislative history and reflected in Doe is that there was this determination to take general damages out to keep the term actual damages. And the commission that Doe v. Chau cites to, you know, right after the passage of the Act determined that the meaning of a special — that of actual damages in this legislation was that of special damages. And Doe v. Chau also points to this area of defamation law where — and this will take me to the privacy civil tort background that I think will be responsive to Judge Smith's question earlier. So what we know is that within defamation, there was this area of case law that predated the Privacy Act where you have defamation — of course, defamation deals with statements that are false. What we have here are not false statements but truthful statements. But where you have false statements that are not defamatory on their face, that are not — and certainly much of the Privacy Act covers information that is not defamatory, you have to show pecuniary losses first before. And both the Supreme Court and the commission come to the determination that that parallels this legislation here. You noted that we're dealing with privacy, that the word privacy is — and obviously privacy gives rise to these kinds of — but it's worth noting how far we are from what would normally constitute a privacy action. In the sort of common law tort sense, privacy, you're talking about public disclosures of an — what is often referred to as an outrageous nature. I think we'd agree that the common law analogy is not a very good one, and you don't have to pursue that one because we understand that. Well, the only aspect of that that I might point to in closing is just that it speaks to both the limited nature of the actual revelation at issue here. It's fundamentally nonpublic nature. And it also speaks to the various ways in which the harms alleged are a kind of speculative harm about the repercussions, but there isn't actually an allegation of harm to reputation here. Roberts. Thank you for your argument. Thanks for coming in today. Rebuttal? Your Honor, returning to the preamble, section 2, the statement of purpose, the statement specifically says any damages for a willful or intentional violation of the Act, that preamble language from section 2, which is part of the Act, clearly points to subsection G4, which is the only part of the Act that provides damages for willful or intentional. So I think Ms. Heifetz errs, therefore, when she says that that any damages language can't be taken literally to mean what it says, because not all damages, not all violations result in damages. Furthermore, the fact that Congress didn't provide actual damages for all violations of the Act focuses the Court's attention on the fact that what we're talking about here is not a question of sovereign immunity, of subject matter jurisdiction of this Court over a suit against a sovereign, but, in fact, a merits-focused issue for which we think the canon plays little or no relevant part. Are you prepared, if the matter does go back and there's a trial, among other things, on damages, to prove that there are damages, however described, that are provably separate and apart from the criminal case? We have to. I think that's absolutely right. I think we have to. And I think we can. I think we can convince, if we put up – I think if we're given a chance to put on our evidence, we can convince a trier of fact that Mr. Cooper suffered damage directly related to the disclosure of this information that's provided from one agency to the other and vice versa. In fact, in that regard, let me point the Court to Mr. Cooper's declaration, which appears in our record excerpts at pages 36 and 37, describing his reaction immediately after being confronted by agents of the Department of Transportation. My reaction to the fact that these government agents knew that I had HIV, which was information they learned only because of the disclosure of Social Security information to Cooper, my reaction to the fact that these government agents knew that I had HIV was complete astonishment, a sense of betrayal, and a sense of betrayal by a trusted institution. He goes on to then describe the anger, the upset, the fear, the trauma that he experienced from this. This is not alleged angst, which was what was described in the Doe case in the Fourth Circuit. We have corroborating evidence in the form of the declarations of his friends and the expert report of Dr. Maldonado, which point both to the timing of when he began to experience this immediately after learning that this information had been disclosed and it points to the fact that it had a debilitating effect on both his relationships and his ability to function with his friends and his social activities, that it resulted in manifest physical symptoms, including sleeplessness, loss of appetite, and other symptoms. And these are the kinds of symptoms and injuries that have been recognized in cases in the past as being the kind of thing for which actual damages can be proven and an award can be based on. So I think that is a critical feature here which distinguishes this from Doe, where the Supreme Court simply accepted the Fourth Circuit's decision and determination that there had not been competent evidence based on corroborative or objective sources, and makes our case like the others that are cited in our brief that have that element. Thank you, Your Honor. Thank you. Thank you both for your arguments. This is an extremely interesting case, very well argued, and it's now submitted for decision. Thank you both for coming in today.
judges: Bright, Hawkins, Smith M.